UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re

      CHARLES R. LIVECCHI,                   Bankruptcy Case No.  09-20897

               Debtor.


_____

      KENNETH W. GORDON, as Trustee,        Adversary Proceeding
                                      Case No.  11-02027

               Plaintiff,

     vs.

      SHERRIE LEE LIVECCHI,

               Defendant.


_____

**DECISION AND ORDER
WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW
GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
ON THE FIRST CAUSE OF ACTION AND
DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE FIRST CAUSE OF ACTION AND
DENYING DEFENDANT'S MOTION TO AMEND ANSWER**


PAUL R. WARREN, United States Bankruptcy Judge


      The bankruptcy case out of which this adversary proceeding arises has been before this

Court since April 8, 2009.  The case has enjoyed a checkered and lengthy history, resulting in

over 1,500 entries in the bankruptcy case docket, plus hundreds of docket entries in the various

adversary proceedings arising out of the bankruptcy case.  By Order dated March 15, 2011,

entered in a related adversary proceeding, Judge Ninfo denied the Debtor's discharge pursuant to

11 USC § 727(a) (*Gordon v. Livecchi*, AP Case No. 10-2067, at ECF No. 12; ECF BK No. 447).[1]

Resolution of the First and Third Causes of Action in this adversary proceeding are among the

last remaining issues arising out of the bankruptcy case requiring this Court's attention.

    This adversary proceeding was commenced by the Chapter 7 Trustee on May 10, 2011

against the Defendant, Sherrie Lee Livecchi ("Defendant"). The First Cause of Action of the

Complaint seeks to avoid the transfer of property under 11 U.S.C. § 548(a) and the turnover of

that property or its value under 11 U.S.C. § 550(a)(1) ("Complaint") (ECF AP No. 1).[2] The

Defendant filed her Answer, generally denying the allegations of the Complaint ("Answer")

(ECF AP No. 7).

    Before the Court for determination are the competing Motion for Summary Judgment by

the Trustee and the Motion to Dismiss the Complaint and to Amend the Answer by the

Defendant. The Trustee brought a Motion for Partial Summary Judgment with respect to the

First Cause of Action in the Complaint ("Motion for Summary Judgment"), pursuant to Rule 56

of the Federal Rules of Civil Procedure ("FRCP") (ECF AP No. 112). In response, the

Defendant filed a Cross-Motion to Dismiss the Complaint ("Cross-Motion for Summary

---

[1] References to the docket for the adversary proceeding herein are identified as "ECF AP No." and references to the docket for the main bankruptcy case are identified as "ECF BK No."

[2] A Second Cause of Action of the Complaint, seeking recovery of post-petition transfers of property under 11 U.S.C. § 549, was dismissed pursuant to a Stipulation and Order dated November 19, 2013.

2

Judgment"), combined with a Motion to Amend the Answer ("Motion to Amend") (ECF AP No. 129).[3]

The Trustee filed an affidavit in support of the Motion for Summary Judgment (ECF AP No. 112), a Memorandum of Law in support of the Motion for Summary Judgment (ECF AP No. 123), and a Reply Memorandum of Law (ECF AP No. 133). The Defendant filed, in addition to the Cross-Motion for Summary Judgment, a Response to the Motion for Summary Judgment (ECF AP No. 131) and a Memorandum of Law (ECF AP No. 130).[4] The Trustee recently filed a Supplemental Memorandum of Law and Appraisal Affidavit with respect to the vehicle at issue (ECF AP Nos. 161 & 162).

---

[3] The Court treats the Defendant's "Cross-Motion to Dismiss" as a "Cross-Motion for Summary Judgment" for several reasons. The Defendant's Cross-Motion references Rule 56 FRCP in its title, although it is denominated as a "Cross-Motion to Dismiss" and "Motion to Amend the Answer" (*See* ECF AP No. 129). The Cross-Motion, however, does not refer to any Federal Rule to support either relief requested: dismissal or leave to amend the answer. In light of the fact that discovery is complete and both parties have submitted matters outside of the pleadings for the Court to consider, the Defendant's Motion to Dismiss can be treated as a Cross-Motion for Summary Judgment. The Court held a series of hearings on the competing motions and permitted the parties to file additional submissions concerning the First Cause of Action. The parties have advised the Court that no further submissions are necessary. The Trustee's Motion for Summary Judgment placed the Defendant on actual notice to include all available evidence in support of the Defendant's Cross-Motion and in opposition to the Trustee's Motion for Summary Judgment. *See In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998).

[4] The Chapter 7 Debtor in the underlying bankruptcy case is not a party to this Adversary Proceeding. However, the Debtor filed his own Motion for Default Judgment, and alternatively, a Reply to the Plaintiff's Reply Memorandum of Law (ECF AP No. 134). The Debtor also filed responding papers to Plaintiff's Motion for Summary Judgment (ECF AP No. 150). Although the Debtor is not a party to this proceeding, the Court has considered the Debtor's submissions and arguments. The Court finds that the Debtor's submissions do not add to the record in any substantive manner.

After consideration of the Trustee's Motion for Summary Judgment and the Defendant's Cross-Motion for Summary Judgment, together with their Memoranda of Law, affidavits, attached exhibits, and the arguments presented by the parties at the hearings held by the Court, the Court makes the following findings of fact and conclusions of law, by which the Court determines that: (1) the Defendant's Cross-Motion for Summary Judgment Dismissing the First Cause of Action is **DENIED**; (2) the Defendant's Motion to Amend the Answer is **DENIED**; (3) the Defendant's request for a jury trial is denied as having been **WAIVED**; (4) the Plaintiff's Motion for Summary Judgment on the First Cause of Action, on the issue of liability for actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A), is **GRANTED**; (5) the Plaintiff's request for a judgment for damages in the amount of $50,000, representing the value of the Ferrari at the time of transfer pursuant to 11 U.S.C. § 550(a), is **GRANTED**.

## I.

## JURISDICTION

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334(b). The First Cause of Action, seeking to avoid a fraudulent transfer, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). The following constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 FRCP, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## II.

## FINDINGS OF FACT

### A.     <u>Background</u>

Charles R. Livecchi, Sr. ("Debtor") filed a voluntary Chapter 11 bankruptcy petition on April 8, 2009 (ECF BK No. 1). The Defendant in this adversary proceeding is the Debtor's wife. The Debtor's schedules state that the Debtor and Defendant were engaged in the management of real property located in both New York and Texas (*Id*.). On "Schedule I," the Debtor indicated that he was self-employed by C.R.L. Management, Inc. ("C.R.L.") and that Defendant was the manager of C.R.L. The Debtor indicated on his petition that he was the sole officer and shareholder of CRL Management, Inc. According to "Schedule I," the Debtor's income consisted primarily of rental income from real property, with the majority of that income derived from the Barrington Apartments ("Barrington Apartments") in Arlington, Texas (*Id*.). The Court notes that C.R.L. filed its petition in bankruptcy (BK Case No. 09-20898) on the same day as the Debtor's personal Chapter 11 case.

The Debtor's schedules indicated that the United States Government ("Government") had obtained a significant money judgment against both the Debtor and C.R.L. just days before the bankruptcy case filings. According to the Government's proof of claim, the money judgment was entered in favor of the United States of America by the District Court for the Western District of New York, following a decision in favor of the Government involving the misuse of funds from the United States Department of Housing and Urban Development ("HUD") (ECF BK Claims Register, Claim No. 13). The Debtor scheduled the judgment in the amount of

$962,876 ("HUD Judgment"). On "Schedule H," the Debtor indicated that C.R.L. was a co-debtor with respect to the HUD Judgment.[5]

The Defendant is not a creditor in the Debtor's personal bankruptcy case and has not filed a proof of claim. The Defendant did participate as a creditor in the C.R.L. bankruptcy case.

The Debtor scheduled his assets as exceeding the total amount of his liabilities. The Debtor scheduled total liabilities of $1,488,930.92, of which the largest scheduled claim was the Government's judgment on behalf of HUD. The Debtor scheduled assets of $3,371,993, consisting of personal property valued at $51,493 and real property valued at $3,320,500. The Debtor's largest scheduled asset was the Barrington Apartments, valued at $2,500,000, and scheduled as not subject to a secured claim. Also, of relevance to the Third Cause of Action in this adversary proceeding, the Debtor listed real property located at 9607 Windy Hollow Drive, Irving, Texas ("Texas Property"), with a value of $285,000 and subject to a secured claim of $12,377.42 (ECF BK No. 13, Schedule "A"). The Debtor indicated joint ownership of the Texas Property with Defendant and stated "wife pays" with respect to that property.[6] The Debtor also

---

[5] The Government filed a proof of claim for $1,169,032 based upon the Judgment in the amount scheduled by the Debtor plus prejudgment interest and costs. The Debtor filed an objection to the Government's proof of claim (ECF BK No. 613). The Court entered an Order allowing the proof of claim, subject to the determination of the Debtor's appeal of the HUD Judgment to the United States Court of Appeals for the Second Circuit (ECF BK No. 815). On January 9, 2013, the Government filed an amended proof of claim for $1,115,434.81 to reflect a one-time payment received from the C.R.L. bankruptcy estate in the amount of $53,597.19. On April 2, 2013, the United States Court of Appeals for the Second Circuit affirmed the District Court's judgment in favor of HUD. *U.S. v. Livecchi*, 711 F.3d 345 (2d Cir. 2013). On October 7, 2013, the United States Supreme Court denied the Debtor's certiorari petition with respect to the decision of the Second Circuit. *U.S. v. Livecchi*, *cert. denied*, 134 S.Ct. 303 (2013).

[6] The Debtor did not claim an exemption in the Texas Property at the time of filing his petition. The Debtor subsequently filed an Amended "Schedule C," claiming an exemption in the Texas Property under N.Y.C.P.L.R. § 5206(a) in the amount of $50,000 (ECF BK No. 870). The

6

scheduled real property located at 96 Boca Avenue, Rochester, New York, for which he claimed a homestead exemption under New York C.P.L.R. § 5206(a).

On January 21, 2010, the United States Trustee ("UST") filed a motion to convert or dismiss the Debtor's Chapter 11 case for cause, alleging as grounds a substantial or continuing loss to or diminution of the Estate and the absence of a reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(4)(A) (ECF BK No. 83). On September 21, 2010, the Court granted the UST's motion and converted the case to Chapter 7 (ECF BK No. 146). The Trustee was appointed and subsequently commenced this adversary proceeding.

### B.    Transfers Between the Debtor and Defendant on the Eve of Bankruptcy

The First Cause of Action in the Complaint seeks to avoid the transfer of a 1998 Ferrari Spider[7] ("Ferrari") by the Debtor to the Defendant pursuant to 11 U.S.C. § 548(a)(1)(A) ("First Cause of Action") (ECF AP No. 1). Specifically, the Complaint alleges that the transfer of the Ferrari to the Defendant by the Debtor is avoidable under 11 U.S.C. § 548(a)(1)(A) because it was "made, received and accepted with actual intent to hinder, delay or defraud either present or future creditors" (*Id.* at ¶ 13). Alternatively, the Complaint asserts that the transfer was constructively fraudulent because the Debtor received less than reasonably equivalent value in exchange for the transfer, and the Debtor was insolvent on the date of the transfer or became

---

Trustee objected to this exemption because the Debtor did not reside in the Property at the time of the filing of his petition and had previously claimed an exemption in his New York residence (ECF BK No. 880). After a hearing on the matter, Judge Ninfo entered an Order disallowing the Debtor's exemption in the Texas Property (ECF BK No. 893).

[7] The Complaint and submissions by the Trustee refer to the Ferrari model as "Spider." However, the model is also referred to as "Spyder" by the Trustee's appraiser (ECF AP No. 160). For the sake of the record, the vehicle is referred to as "Ferrari" throughout the decision.

insolvent as a result of the transfer. The Complaint seeks recovery of either average retail value of the Ferrari, alleged in the Complaint to be $84,000, or turnover of the Ferrari, pursuant to 11 U.S.C. § 550(a)(1).

In her Answer, Defendant either generally denies the allegations or denies knowledge or information sufficient to form a belief as to the truth of the allegations set out in the First Cause of Action (ECF AP No. 7). However, Defendant affirmatively asserts and admits certain allegations by way of her First Affirmative Defense ("First Affirmative Defense"), contending that:

> The value of the Ferrari so transferred is approximately $40,000.00 to $50,000.00, and Defendant, per the attachments at Exhibit 'A', paid the sum of $50,000.00 to the Debtor for the said vehicle. Further, at the time of the said transfer, the Debtor was <u>not</u> insolvent and was preparing to file a Chapter 11 case, not a Chapter 7 case. The transfer was only to obtain ready cash to facilitate the filing of the Chapter 11, and it was intended that all the Debtors [sic] valid Creditors would be paid.

(*Id.* at ¶¶ 5-6) (emphasis in original).

At a hearing held on September 11, 2014, the parties stipulated that the value of the Ferrari on April 6, 2009—the date of transfer—was $50,000. As a result, there is no longer any dispute between the parties as to the value of the Ferrari as of the date of transfer.

Attached to Defendant's Answer is a copy of a cashier's check in the amount of $50,000 and dated April 6, 2009—two days prior to the Debtor's bankruptcy filing—drawn on Lexington Avenue Federal Credit Union ("Lexington FCU") and payable to the Debtor ("Lexington FCU Check") (ECF AP No. 7, Exhibit "A"). Also attached to Defendant's Answer is a copy of a Lexington FCU Promissory Note and Truth-in-Lending Disclosure, bearing the same date and indicating that Defendant had borrowed the sum of $50,000 from Lexington FCU and that the funds were made payable to "C.R. Livecchi" ("Promissory Note") (*Id.*).

8

The Trustee's Motion for Summary Judgment, with supporting exhibits—including bank records obtained from Lexington FCU through third-party discovery—seeks summary judgment on the First Cause of Action based solely on a theory of actual fraud under 11 U.S.C. § 548(a)(1)(A) (ECF AP No. 112). The Trustee no longer seeks recovery, in the alternative, for constructive fraud under 11 U.S.C. § 548(a)(1)(B). Thus, the Trustee does not allege that the Debtor received less than reasonably equivalent value in exchange for the transfer or that the Debtor was insolvent on the date of the transfer or rendered insolvent because those elements are not relevant to an action sounding in actual fraud under 11 U.S.C. § 548(a)(1)(A) (ECF AP No. 123).

The Trustee's Motion for Summary Judgment alleges that the following facts are undisputed. On April 6, 2009, the Defendant paid to the Debtor $50,000 in consideration for the transfer of the Ferrari (ECF AP No. 112 at ¶ 14). As evidence of this transaction, the Trustee offers a copy of the Lexington FCU Check, including the endorsement showing that the check was deposited by the Debtor in a Lexington FCU account the same day (ECF AP No. 112, Exhibit "C"). The Trustee also submits certified copies of Lexington FCU bank statements, obtained through a subpoena issued to Lexington FCU in late 2013, because the Defendant had failed to produce those records in response to discovery demands (ECF AP No. 112 at ¶¶ 12-13). The bank statements indicate that the $50,000 Lexington FCU Check was disbursed from a Lexington FCU account held solely in the Defendant's name into a separate Lexington FCU account jointly owned by the Debtor and Defendant (ECF AP No. 112, Exhibit "E"). The bank statements specifically reference the Ferrari, the Lexington FCU loan, and the check number (*Id.*). Following the April 6, 2009 deposit of $50,000 to the Livecchis' joint bank account, the next day $54,000 was then transferred from the Livecchis' joint account back to a Lexington

9

FCU account solely owned by the Defendant (*Id.*). This transaction is also evidenced by the certified Lexington FCU bank statements, which show "[w]ithdrawal [t]ransfer [t]o Livecchi, Sherrie" in the amount of $54,000 on April 7, 2009 (*Id.*). The transfer of $54,000 left a remaining balance of $874.20 in the Livecchis' joint account (*Id.*; ECF AP No. 112 at ¶¶ 15-17). There was no further activity on the joint account between the transfer of $54,000 to the Defendant on April 7, 2009 and the Debtor's bankruptcy filing on the next day (ECF AP No. 112, Exhibit "E").

As additional evidence of Defendant's involvement in the Debtor's alleged scheme to hinder, delay, or defraud creditors, the Trustee points to the Defendant's August 2012 deposition testimony (ECF AP No. 112, Exhibit "D"). During her deposition, Defendant confirmed that she gave the $50,000 check to the Debtor either the same day that it was issued or the next day, but she could not recall where the Debtor deposited the check (*Id.* at 29). She also testified that she could not remember whether she received anything from the Debtor in exchange for the $50,000 and that she did not give any other consideration for the Ferrari (*Id.* at 27.). According to Defendant's deposition testimony, the Debtor did not transfer the certificate of title for the Ferrari to the Defendant until a number of months after the purported sale (*Id.* at 25-27). Defendant testified that she made monthly payments to Lexington FCU for the vehicle loan and continued to make those payments at the time of her deposition (*Id.* at 30-31).

The Trustee points to the Debtor's failure to include in his bankruptcy schedules any mention of the existence of the Ferrari, the transfer of the Ferrari on the eve of bankruptcy, the deposit of the $50,000 into the Livecchis' joint account, or the Debtor's transfer of $54,000 to Defendant one day prior to filing his bankruptcy petition, as evidence of the Debtor's actual intent to hinder, delay, or defraud creditors (ECF AP No. 123 at 4). In the Statement of Financial

10

Affairs, the Debtor checked the box for "none" with respect to "other transfers" where a Debtor is required to "[l]ist all property…transferred either absolutely or as security within two years immediately preceding the commencement of this case" (ECF BK No. 13-4). On his schedule of personal property, the Debtor scheduled a Lexington FCU account with a balance of $600 but did not indicate that this was an account owned jointly with Defendant (ECF BK No. 13, Schedule "B"). The Debtor also scheduled several vehicles, but not the Ferrari at issue in this adversary proceeding (*Id.*).

## III.

## ARGUMENTS OF THE PARTIES

The Trustee argues that the undisputed facts, supported by admissible evidence in the record, prove that the Debtor's "sale" of the Ferrari to the Defendant for $50,000, and the next-day transfer of $54,000 by the Debtor to the Defendant, was a fraudulent scheme undertaken by the Debtor and Defendant on the eve of bankruptcy, made with actual intent to hinder, delay, or defraud creditors of either the Ferrari, the $50,000 sale proceeds, or both (ECF AP No. 112 at ¶¶ 18-20). The Trustee asserts that the undisputed facts prove that transaction resulted in no consideration actually being paid to the Debtor for the Ferrari because the sale proceeds were returned to the Defendant the next day (*Id.* at ¶ 18). Further, the Trustee contends that the fraudulent transfer encumbered the Ferrari with a lien in favor of Lexington FCU, which but for the transfer, would have been unencumbered and a valuable asset to the Estate (*Id.* at ¶ 20). No evidence of such a lien has been offered by the Trustee, however. The Trustee seeks recovery of $50,000, representing the stipulated value of the transferred property (ECF AP No. 161).

11

In response to the Trustee's Motion for Summary Judgment, the Defendant filed a Cross-Motion for Summary Judgment, pursuant to Rule 56 FRCP (ECF AP No. 129). Support for the Defendant's Cross-Motion is offered in the form of an affidavit from the Defendant (ECF AP No. 131).[8] Taken together, the Defendant's submissions attempt to justify the Ferrari transaction rather than raise any genuine issues concerning the material facts as alleged in the Trustee's Motion for Summary Judgment. The Defendant admits that "[i]n response to the immediate Motion, I can state to the Court that eventually money was put into my account by Mr. Livecchi" (ECF AP No. 131 at ¶ 4). The Defendant admits—reading together Paragraphs 3, 4, 5, and 12 of her Affidavit—that the Debtor transferred $54,000 to the Defendant to shield those funds from creditors, so that the funds could be used for the Debtor's benefit while under the protection of the Bankruptcy Court (*Id.* at ¶¶ 3-5, 12). The Defendant argues that the undisclosed Ferrari "transfer" in exchange for $50,000 and the next-day transfer of $54,000 by the Debtor to the

---

[8] Much of the focus of Defendant's Cross-Motion for Summary Judgment is on the Third Cause of Action in the Trustee's Complaint, concerning real property owned by the Debtor and the Defendant in Irving, Texas, although the Cross-Motion seeks dismissal of the entire Complaint on jurisdictional grounds. In response to the Defendant's Cross-Motion for Summary Judgment, the Trustee filed a Cross-Motion for Partial Summary Judgment on the Third Cause of Action, on July 28, 2014. At this point, the Trustee's Cross-Motion for Summary Judgment is not ripe for determination in the Court's view, despite the contrary view argued in the Trustee's Supplemental Memorandum of Law filed on October 15, 2014 (ECF AP No. 161). Specifically, the parties have not adequately addressed the interplay of 11 U.S.C. § 541(a)(2), 11 U.S.C. § 363, 11 U.S.C. § 726(c), or the emerging law from the Texas state and federal courts concerning the treatment of Texas community property rights for real property acquired pre-BAPCPA, where one spouse has filed a petition in bankruptcy and the other spouse has not. The Court will set a schedule for further submissions by the parties with respect to the Trustee's Cross-Motion for Summary Judgment on the Third Cause of Action, including a stipulation as to those facts not the subject of any genuine dispute.

Defendant was "good consideration" because Defendant had agreed to hold those funds for the Debtor's benefit (*Id.* at ¶ 4). No writing memorializing such an agreement is alleged to exist.

While Defendant provides bank records to show that she did advance funds for the Debtor's benefit over the course of the following year, the Trustee argues that the Debtor's failure to disclose on his schedules the Ferrari or the $54,000 transfer to the Defendant is evidence of the Debtor's actual intent to hinder, delay, or defraud creditors. The factual issues sought to be raised by the Defendant, concerning the Debtor's solvency and the exchange of reasonably equivalent value for the Ferrari, are not elements necessary to support on a cause of action alleging intent to hinder, delay, or defraud creditors under 11 U.S.C. § 548(a)(1)(A). The Defendant's submissions in response to the Trustee's Motion for Summary Judgment do not raise any genuine issue of material fact concerning the "sale" of the Ferrari, the undisclosed transfer of $54,000 from the Debtor to Defendant, or the retention of title to the Ferrari by the Debtor for a number of months that followed.

## IV.

## CONCLUSIONS OF LAW

### A. Defendant's Cross-Motion for Summary Judgment

A brief discussion of the Bankruptcy Court's jurisdiction is appropriate, given the Defendant's repeated insistence that this Court "cannot even sit as a 'fact finding' tribunal" (ECF AP No. 129 at ¶ 12). The Defendant seeks dismissal of the Complaint, asserting that this Court

13

lacks jurisdiction to hear the fraudulent transfer cause of action concerning the Ferrari, claiming the proceeding is non-core.[9]

The First Cause of Action seeks to avoid an allegedly fraudulent conveyance of the Ferrari by the Debtor to the Defendant, who is the Debtor's wife but is not a creditor in the Debtor's bankruptcy case. In her Cross-Motion for Summary Judgment, the Defendant challenges this Court's subject matter jurisdiction, asserting that the action must be dismissed because the Trustee should have brought the action in an Article III Court (ECF AP No. 130 at 5-6). The Defendant further asserts that she is not a claimant or party to the bankruptcy case, and did not consent to this Court's exercise of jurisdiction. Following the Supreme Court's recent decision in *Executive Benefits v. Arkison*, __U.S.__, 134 S. Ct. 2165 (2014) ("*Bellingham*"), this Court requested that the Defendant make a further submission to clarify Defendant's jurisdictional challenge. The Defendant's attorney filed a letter reply with the Court, noting that the Supreme Court "seems to agree with the [Bankruptcy] Court that 28 U.S.C. § 157(c)(1), (2) permit [sic] the Bankruptcy Court to hear non-core matters such as the ones in this case" (ECF AP No. 146). However, counsel emphasized that the Defendant does not consent to the Court's jurisdiction in this matter (*Id.*). The Court finds that the Defendant's jurisdictional objection is not legally tenable.

---

[9] The Court notes that the Defendant's Answer failed to admit or deny Plaintiff's allegation that the Complaint involved a core proceeding, as required by Rule 7012(b) FRBP. The Defendant's jurisdictional objection confuses the procedural implications presented by a "*Stern* claim," as contrasted to those presented by a non-core claim. As 28 U.S.C. § 157(c)(1) and Rule 7012(b) FRBP make clear, encountering a non-core matter impacts the Court's ability to enter final orders or judgments, not the Court's jurisdiction to hear the matter. Further, Defendant's assertion that the First Cause of Action is not a core proceeding is without any citation of authority in support of that proposition and is contrary to the plain language of 28 U.S.C. § 157(b)(2)(H).

14

The Supreme Court held in *Stern v. Marshall*, __U.S.__, 131 S. Ct. 2594 (2011) ("*Stern*") that Article III of the Constitution prohibits Congress from vesting a bankruptcy court with authority to enter final judgment on certain statutorily designated core claims. These constitutionally-infirmed core claims became known as "*Stern* claims." In the wake of *Stern*, there existed considerable disagreement as to whether the Bankruptcy Courts could issue findings of fact and conclusions of law, subject to *de novo* review by the District Court, with respect to "*Stern* claims." The Bankruptcy Court's jurisdiction to hear fraudulent conveyance actions was clarified by the Supreme Court in *Bellingham*. The Supreme Court concluded that when the bankruptcy court encounters a "*Stern* claim," the claim should be treated procedurally as non-core if the criteria of 28 U.S.C. § 157(c)(1) are satisfied, and the bankruptcy court should hear the proceeding and issue proposed findings of fact and conclusions of law. *Bellingham*, 134 S. Ct. at 2169.

Therefore, in this case—where the Defendant is not a creditor and has not consented to this Court's issuance of a final judgment with respect to the "*Stern* claim" at the heart of the Trustee's First Cause of Action—*Bellingham* instructs that the Bankruptcy Court has jurisdiction to hear this matter for the purpose of making findings of fact and conclusions of law, subject to *de novo* review by the District Court.

The Defendant's continued insistence that only an Article III court has jurisdiction to hear the Trustee's fraudulent conveyance cause of action is without merit and is not supported by *Bellingham*. Accordingly, the Defendant's Cross-Motion for Summary Judgment seeking dismissal of the Complaint for lack of subject matter jurisdiction is **DENIED**.

15

## B. **Defendant's Motion to Amend Answer to Request a Jury Trial**

The Cross-Motion for Summary Judgment and Motion to Amend mark the first time that the Defendant has made a demand for a jury trial in this action (ECF AP No. 129). The Complaint was filed on May 10, 2011. The Defendant's Answer was filed on June 12, 2011. The Defendant failed to serve a demand for a jury trial, as required by Rule 38(b) FRCP and Rule 9015 FRBP. For the reasons that follow, the Court concludes that the Defendant has waived a jury trial by failing to serve the parties with a timely written demand or including that demand in her Answer.

The Supreme Court has held that a person who has not filed a claim in a bankruptcy case has a right to a jury trial under the Seventh Amendment, when sued by the bankruptcy trustee in a fraudulent conveyance action. *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 36 (1989) ("*Granfinanciera*"). However, the recognized existence of a noncreditor-defendant's right to a jury trial under *Granfinanciera* and the procedural vehicle by which the noncreditor-defendant must seek to preserve that right under the Federal Rules of Civil Procedure are distinct propositions.

Pursuant to Rule 38(c) FRCP, made applicable in cases and proceedings before the Bankruptcy Court by Rule 9015 FRBP, a party may demand a jury trial by either including the demand in a pleading or serving all parties with written demand, no later than 14 days after the last pleading directed to the issue is served. A "pleading" is defined by Rule 7(a)(1) through 7(a)(7) FRCP, to include: a complaint, answer to an complaint, answer to a counterclaim designated as a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and if the court orders one, a reply to an answer. A motion to dismiss or a motion for summary judgment does not constitute a pleading within the meaning of Rule 38. *See*

16

8 *Moore's Federal Practice* § 38.50[3][b][iv] (Matthew Bender 3d ed.). Rule 38(d) FRCP provides that a party waives a jury trial, unless a proper demand is timely served and filed.

The last pleading by the Defendant was her Answer to the Complaint, served and filed on June 12, 2011 (ECF AP No. 7). The Defendant first made the demand for a jury trial on January 6, 2014, in connection with her Cross-Motion for Summary Judgment, by also including a "Motion to Amend the Answer" (ECF AP No. 129 at ¶ 12). The Defendant's Motion to Amend seeks leave to serve a proposed amended answer, which includes a request for a jury trial and a request to transfer the Third Cause of Action to the Texas state courts (ECF AP No. 7). As grounds for the Motion to Amend the Answer, the Defendant asserts that "given the case law known to all parties at this time, but unknown to the Defendant and her counsel at the inception of the Adversary Proceeding, she should be able to amend her Answer to deny that this is a core proceeding" (*Id*.).

Rule 15(a)(1) FRCP and Rule 7015 FRBP, provide that "a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Rule 15(a)(2) FRCP provides that, in all other cases a party may amend its pleading only with the opposing party's consent or the court's leave.

Here, in response to the Trustee's Motion for Summary Judgment, the Defendant cross-moved for summary judgment and to amend the Answer. The Court can only surmise that the Defendant's Motion to Amend is made pursuant to Rule 15(a)(2) FRCP because the Defendant cites no authority in support of her Motion. The Defendant's request for leave to amend comes almost two and one-half years after the Answer was filed, during which time the Court held

17

numerous hearings and conferences with the parties, and the parties conducted and completed discovery concerning the First Cause of Action.

While the Court is mindful that Rule 15(a)(2) FRCP provides that leave to amend should be freely given "when justice so requires," the Court declines to exercise its discretion because the Court concludes that—balancing the harms to each party—it would be an injustice to grant the Defendant leave to amend in this case. The parties have engaged in protracted discovery and motion practice as is evidenced by the docket. Discovery concerning the First Cause of Action is now complete. The Defendant points to no genuine issue of material fact regarding the series of undisclosed transfers in responding to the Trustee's Motion for Summary Judgment.[10] The First Cause of Action is ripe for determination. The Defendant's Motion to Amend the Answer appears to be a thinly veiled attempt to forum shop based on a tortured jurisdictional objection, all in an effort to delay a resolution of the Trustee's First Cause of Action. The Defendant failed to avail herself of the removal procedure provided by 28 U.S.C. § 1452(a), if having a jury hear the facts was truly the Defendant's goal. Perhaps this may hint at the Defendant's real desire to avoid any decision on the Trustee's fraudulent conveyance action, rather than a genuine desire to have the evidence considered by a jury.

The Court finds that, pursuant to Rule 38 FRCP and Rule 9015 FRBP, the Defendant has waived her right to demand a jury trial. Accordingly, the Defendant's Motion to Amend her Answer is **DENIED**.

---

[10] The Court wonders how the Defendant would expect to reach a jury trial on the First Cause of Action, when Defendant raises no genuine issues of material fact, with evidence in admissible form, to survive a motion for summary judgment as is required by Rule 56(c) FRCP and Rule 7056 FRBP.

### C. Trustee's Motion for Summary Judgment on the Fraudulent Conveyance Action

#### 1. *Summary Judgment Standard*

Rule 56 FRCP and Rule 7056 FRBP provide that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 *Moore's Federal Practice* § 56.11[1][a] (Matthew Bender 3d ed.). An issue of material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once the moving party has met its initial burden, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. *Id.* at 250. The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Rather, the non-movant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(internal quotation marks omitted). To defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmonvant]." *Anderson*, 477 U.S. at 252. The court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Moreover, the court must draw all

19

reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Anderson*, 477 U.S. at 248-49.

For purposes of the competing motions for summary judgment, the Court finds that there are no genuine issues of material fact.

### 2. *Fraudulent Conveyance as an Avoidable Transfer*

In order to set aside, or avoid, a transfer as an intentionally fraudulent conveyance under 11 U.S.C. § 548(a)(1)(A), the plaintiff is relieved of the need to establish two of the most important elements in a case involving a constructively fraudulent conveyance—insolvency of the transferor and inadequacy of consideration. *In re MarketXT Holdings Corp.*, 376 B.R. 390, 402 (Bankr. S.D.N.Y. 2007) ("*MarketXT*") (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)). Moreover, it is well-established that intent to hinder or delay creditors is sufficient to sustain an action under § 548(a)(1)(A)—intent to defraud need not be proven. *Id.* at 403 (citing *Shapiro v. Wilgus*, 287 U.S. 348, 254 (1932); *Hassett v. Goetzmann*, 10 F. Supp. 2d 181, 188 (N.D.N.Y. 1998); *Flushing Sav. Bank v. Parr*, 438 N.Y.S.2d 374 (2d Dep't 1981)).

The Trustee's Motion for Summary Judgment asserts that the undisputed facts supported by evidence in the record demonstrate that the Debtor's sale of the Ferrari to Defendant for $50,000, and the next-day transfer of $54,000 by the Debtor to Defendant, is a transfer avoidable pursuant to 11 U.S.C. § 548(a)(1)(A), which provides:

> "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A)    made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made . . . indebted [.]"

The Trustee carries the burden of proof of showing, by a preponderance of the evidence, that the debtor effected a transfer with the requisite intent under § 548(a)(1)(A). *In re Northstar Dev. Corp.*, 465 B.R. 6, 12 (Bankr. W.D.N.Y. 2012). Proof of an intention to hinder, delay or defraud creditors can be established by circumstantial evidence through proof of the existence of certain "badges of fraud." *MarketXT*, 376 B.R. at 405.

"Badges of fraud are 'circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent, and they are allowed as proof 'due to the difficulty of proving actual intent to hinder, delay or defraud creditors.'" *Id.* (quoting *Sharp Int'l Corp.*, 403 F.3d at 56). The Second Circuit has identified the following as badges of fraud for courts to consider:

1) The financial condition of the transferor at the time of transfer;

2) Concealment of facts and false pretenses by the transferor;

3) An unconscionable discrepancy between the value of the property transferred and the consideration received;

4) A close relationship between the parties to the alleged fraudulent transaction;

5) The transferor's reservation of rights in or control over the transferred property after the alleged conveyance.

*In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *see HBE Leasing Corp.*, 48 F.3d 623, 626 (2d Cir. 1995); *In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). "The existence of several 'badges of fraud' can constitute clear and convincing evidence of actual fraudulent intent, where a motion for summary judgment is before the Court." *MarketXT*, 376 B.R. at 405 (citing *In re Actrade Fin. Tech.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005)).

A transferee may be able to assert an affirmative defense under 11 U.S.C. § 548(c) against the plaintiff's claims by asserting its own good faith and establishing that value was

21

given. *Id.* at 403. However, 11 U.S.C. § 548(c) requires that value be given directly "in exchange" for the transfer of the property in question. *Id*. at 419. "The Court must focus precisely on the specific transaction or transfer sought to be avoided in order to determine whether that transaction falls within the statutory parameters of either an intentional or constructive conveyance." *Id*. It is established under New York law that in an intentionally fraudulent conveyance case, the relevant inquiry is whether the transferee had either "an actual or constructive knowledge of the fraudulent scheme." *Id.* at 403 (citing *HBE Leasing Corp.,* 48 F.3d at 636).

The Trustee asserts that evidence in the record proves that the requisite "badges of fraud" are present in this case, providing clear and convincing evidence of the Debtor's intent to hinder, delay, or defraud his creditors (ECF AP No. 123 at 4).[11] As a First Affirmative Defense, the Defendant argues that the transfer of money from the Defendant to the Debtor for the Ferrari was fair consideration for the transfer of the Ferrari (ECF AP No. 129 at ¶ 4). Applying the "badges of fraud" identified by the Second Circuit in *Sharp International* and its progeny, the Court concludes that there is ample evidence in the record of the existence of each of the "badges of fraud," providing circumstantial evidence of the Debtor's actual intent to "hinder [or] delay creditors"—at a minimum—or to actually defraud creditors, for the reasons that follow, so as to sustain the Trustee's request for summary judgment under 11 U.S.C. § 548(a)(1)(A).

---

[11] The Court notes that the Trustee addressed the "badges of fraud" in his Memorandum of Law in support of his Motion for Summary Judgment on the First Cause of Action. The Trustee's Complaint alleged actual fraud as an alternative to constructive fraud. However, seeking to avoid the Ferrari transfer on the theory of actual fraud became the Trustee's exclusive theory of recovery, as a result of facts and evidence obtained through third-party discovery.

### 3. *Application of the Badges of Fraud*

**i. The financial condition of the Debtor-transferor at the time of transfer—**

On March 31, 2009, just six days before the Debtor engaged in both the Ferrari transfer and the $54,000 cash transfer, the United States District Court for the Western District of New York entered a judgment in favor of the Government and against the Debtor-transferor for nearly $1 million. Certainly, that fact suggests the Debtor faced a difficult financial circumstance at the time he transferred the Ferrari and the $54,000 in cash to Defendant. Even accepting as true the Debtor's claimed "solvency," the entry of the judgment in favor of the Government is a factor that might motivate the Debtor to take steps to put assets beyond the reach of his creditors—in an effort to "hinder or delay" creditors from collecting. Indeed, the Defendant admits that the sale of the Ferrari was to generate cash for the Debtor—her husband—and admits that the next-day transfer of $54,000 by the Debtor was to avoid seizure of that cash in the Debtor's accounts at M&T Bank (ECF AP No. 7 at ¶¶ 5-6; ECF AP No. 129-3 at ¶ 4).

The Court finds that the record demonstrates that the Debtor's financial condition was strained by the Government's money judgment at the time of the transfer of the Ferrari and the $54,000 in cash.

**ii. Concealment of facts and false pretenses by the transferor—**

The timing of the transfer of the Ferrari in exchange for Defendant's payment of $50,000 and the next-day transfer of $54,000 in cash by the Debtor to Defendant, in relation to the Debtor's failure to disclose the Ferrari transfer or the $54,000 transaction in his bankruptcy schedules—filed only two or three days following the transfers—suggests that the omission did not result from memory faded by the passage of time. The Trustee asserts that the fraudulent transfers were "accomplished by the Debtor and the Defendant in the two days prior to the

23

Debtor filing his bankruptcy petition" and that the Debtor "concealed" the transfers by failing to list or disclose "the Ferrari, its transfer, the deposit of the $50,000, the existence of the joint account at Lexington Federal Credit Union nor the transfer back to the Defendant of the $50,000 [sic] in either the Debtor's schedules or his Statement of Financial Affairs" (ECF AP No. 123 at 4; ECF AP No. 112 at ¶¶ 18-20). In response, the Defendant merely asks the Court to remember that "[u]p until September 21, 2010 Mr. Livecchi was in a Chapter 11 reorganization" (ECF AP No. 131 at ¶ 4). The Defendant admits that the Debtor "put money into her account . . . because his own M&T accounts were seized" (*Id.*).

The record demonstrates that there is no factual dispute that the transfer of the $50,000 from the Defendant to the Debtor for the Ferrari occurred on April 6, 2009. The record also demonstrates that the Debtor then transferred a total of $54,000 back to the Defendant on April 7, 2009. The practical result—and actual result—was that the Debtor and Defendant, acting in concert, placed the Ferarri and $54,000 in cash beyond the reach of creditors. The Debtor then filed his voluntary Chapter 11 bankruptcy petition on April 8, 2009.

Given that the Ferrari transfer and the transfer of $54,000 to Defendant occurred two days before the Debtor filed his Chapter 11 case and two weeks prior to the Debtor's filing of the "Statement of Financial Affairs," it is not lost on the Court that the Debtor wholly failed to disclose the transfer of the Ferrari for $50,000 or the next-day transfer of the sum of $54,000 to the Defendant. In fact, the bank records evidencing the existence of the Ferrari and its transfer and the next-day transfer of $54,000 by the Debtor to the Defendant were only discovered by the Trustee through the issuance of third-party subpoenas, pursuant to Rule 45 FRCP and Rule 9016 FRBP, served on Lexington FCU more than two years after this adversary proceeding was commenced, because the Defendant had failed to respond to discovery demands requesting those

24

records.  The Court finds that there is ample evidence in the record to conclude that the Debtor concealed both the transfer of the Ferrari and the next-day transfer of $54,000 to Defendant, which he had a duty to disclose in his bankruptcy schedules and in his statement of financial affairs.

### iii.   An unconscionable discrepancy between the value of the property transferred and the consideration received—

The Trustee asserts that the banking records demonstrate that the Debtor actually received no consideration for the Ferrari, as "all funds paid by the Defendant to Debtor for the Ferrari were transferred a day later back to the Defendant" (ECF AP No. 123 at 4).  The Trustee argues that, in effect, the Defendant "paid nothing to the Debtor for the transfer of the vehicle" because the $50,000 purchase proceeds were immediately returned to Defendant and those funds became her property, regardless of the parties' undisclosed arrangement for the monies to be "held" by Defendant as part of a clandestine scheme (ECF AP No. 112 at ¶ 18).  The Defendant, as transferee of the Ferrari, argues that the $50,000 she paid to the Debtor in exchange for the transfer of the vehicle was fair consideration for the transfer of the vehicle (ECF AP No. 129 at ¶ 4).  In other words, the Defendant claims to have paid a fair price for the Ferrari.  The parties have stipulated that the value of the Ferrari was $50,000 on the day of its transfer.

The Court finds that the evidence in the record demonstrates that there was an unconscionable discrepancy between the value of the Ferrari and the purchase price, because the Debtor and Defendant structured the transaction so that the same traceable sale proceeds were actually transferred back to the Defendant the next day—allegedly for safekeeping, but with only the Debtor's hope that the undisclosed and undocumented arrangement would be honored by the Defendant.

25

### iv. A close relationship between the parties to the alleged fraudulent transaction—

The Debtor and Defendant are husband and wife. The Trustee asserts that the Debtor and the Defendant worked in concert to accomplish the transfer to the Defendant of both the Ferrari and the sum of $54,000, as well as the concealment of those transfers. The Trustee argues that the Debtor and Defendant are "insiders" of each other, as defined in 11 U.S.C. § 101(31), and that "there can be no doubt as to the closeness of their relationship at least with respect to the transaction in question" (ECF AP No. 123 at 4).

The Defendant does not dispute her close relationship with the Debtor. The Court notes, and the Trustee acknowledges, that the Debtor and the Defendant have referenced their relationship as "estranged" during past hearings. However, the Defendant admits in her deposition that the Debtor informed her that the Ferrari was for sale, and that she had no idea whether he was advertising the sale of the Ferrari to other people or how he arrived at an asking price of $50,000 (ECF AP No. 112 at 27). Further, the Defendant admits in her Affidavit that she agreed to "hold" funds for the Debtor to prevent their seizure by M&T Bank and that she agreed to "distribute monies for the benefit of Mr. Livecchi" (ECF AP No. 131 at ¶¶ 4-5). These facts do not suggest an "estranged" relationship.

The Court finds that the evidence in the record demonstrates that the Debtor and the Defendant had both a spousal and working relationship, a joint bank account, and that they participated in financial transactions for the benefit of each other.

### v. The transferor's reservation of rights in or control over the transferred property—

The Court also finds that the evidence in the record demonstrates that the Debtor reserved control over the transferred property after the alleged conveyance—both as to the Ferrari and as to the $54,000—with Defendant's active participation and assistance. The Defendant acknowledged in her deposition testimony that the Debtor "did not transfer the title or registration [to the Ferrari] for quite a while, but I don't know when" (ECF AP No. 112, Ex. "D" at 25). Consequently—leaving aside the fact that the Debtor returned the entire traceable $50,000 in purchase proceeds to the Defendant to hold for the Debtor's benefit—the Debtor did not transfer legal title to the Ferrari at the time of the "sale." No bill of sale, certificate of title, or other document evidencing the transfer of ownership of the Ferrari to the Defendant appears to exist. The Defendant in fact admits that the Debtor remained the titled owner of the Ferrari for many months following the "sale" (*Id.* at 25-26).

The Court finds that the evidence in the record demonstrates that all of the badges of fraud are present in this case—providing circumstantial evidence of the Debtor's actual intent to hinder and delay creditors, at a minimum, or to actually defraud those creditors. *See MarketXT*, 374 B.R. at 405. The Court finds that the Trustee has demonstrated, by a preponderance of evidence, the actual intent of the Debtor, with the Defendant's assistance and cooperation, to "hinder, delay, or defraud" creditors in violation of 11 U.S.C. § 548(a)(1)(A). The Debtor's failure to disclose in his bankruptcy schedules the transfer of the Ferrari or the next-day transfer of $54,000 to the Defendant, despite the occurrence of the transfers just two days prior to filing Chapter 11 schedules, suggests knowing concealment of the transactions by the Debtor.

27

Although the Defendant never expressly asserts "good faith" as a defense, the Court presumes that the Defendant makes certain assertions in her affidavit and deposition testimony for the purpose of attempting to demonstrate "good faith." The Defendant stated in her deposition that the Debtor was selling the Ferrari in order to pursue an appeal of the HUD judgment and admits that the Debtor "put money into her account" following the transaction "because the Debtor's accounts at M&T Bank were seized" (ECF AP No. 112, Ex. "D" at 27; ECF AP No. 131). The Court notes that the Defendant offers no credible explanation why the $50,000 proceeds used to purchase the Ferrari were moved from the Defendant's personal account to the Livecchis' joint account, followed by the transfer of the sum of $54,000 back to the Defendant's personal account—all of which accounts were maintained with Lexington FCU, not with M&T Bank. In the Defendant's affidavit, she alleges that her "account distributed $39,326.44 on behalf of Mr. Livecchi of the $50,000 I was holding for him" (ECF AP No. 131 at ¶ 4). Further, "[a]n additional sum of $15,000.00 was distributed in 2010, making the total distributed $54,326.44. A second $15,000.00 was distributed over and above the $54,000.00 late in 2010 after the conversion to a Chapter 7. This is money I advanced to Mr. Livecchi" (*Id.* at ¶ 5). "As a result of the foregoing . . . you can see from my checking account records that I distributed monies for the benefit of Mr. Livecchi" (*Id.* at ¶ 6).

The statements provided in the Defendant's affidavit are troubling to the Court, as they indicate a knowing and intentional effort by the Defendant to assist the Debtor in the concealment of transactions involving the Chapter 11 Debtor's assets—either through the undisclosed transfer of the Ferrari, the undisclosed payment of $50,000 to purchase the Ferrari, or the undisclosed $54,000 transfer to the Defendant. The Defendant's assertion that she was holding the sale proceeds for the Debtor, and later advancing funds for the benefit of the Debtor,

28

raises serious concerns about the so-called "consideration" exchanged for the Ferrari. Furthermore, the $50,000 transferred from the Defendant's personal account, to the Livecchis' joint account, and then back to the Defendant's personal account, is admitted by the Defendant and is confirmed by the Lexington FCU certified banking statements attached to the Trustee's Motion for Summary Judgment. The transactions create the appearance that both the Ferrari and the sum of $54,000 were secretly transferred to the Defendant for the Debtor's benefit. This series of transactions suggests conduct that may be in violation of Title 18 of the United States Code.

The Court concludes that the Trustee has met his burden of demonstrating actual intent to hinder, delay, or defraud creditors by the Debtor, with the assistance of the Defendant. The Defendant has failed to raise any genuine issue of material fact with respect to the First Cause of Action. In fact, Defendant admits that the transactions occurred as alleged by the Trustee. The Court finds that the record provides ample evidence of the existence of all of the badges of fraud, giving rise to circumstantial evidence sufficient to support a finding of the Debtor's actual intent to hinder, delay, or defraud creditors, thereby allowing the Trustee to avoid the Ferrari transfer pursuant to 11 U.S.C. § 548(a)(1)(A).

Therefore, the Trustee's Motion for Summary Judgment on the First Cause of Action, under 11 U.S.C. § 548(a)(1)(A), is **GRANTED**.

### 4. *Remedy Under 11 U.S.C. § 550(a)*

Having concluded that the Trustee should have judgment avoiding the transfer of the Ferrari, pursuant to 11 U.S.C. § 548(a)(1)(A), it is necessary for the Court to consider the appropriate remedy under 11 U.S.C. § 550(a).

Case 2-11-02027-PRW    Doc 166    Filed 11/20/14    Entered 11/20/14 16:11:47    Desc
Main Document    Page 29 of 32

Upon the avoidance of a transfer under 11 U.S.C. § 548, the statutory remedy provided by 11 U.S.C. § 550(a) is that "the trustee may recover, for the benefit of the Estate, the property transferred, or, if the court so orders, the value of such property," from—

> (1)    The initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)    Any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

In this case, the Trustee seeks recovery for the benefit of the Estate of a judgment in the amount of $50,000—representing the stipulated value of the Ferrari on the date of transfer, pursuant to 11 U.S.C. § 550(a).  The Trustee contends that the payment of $50,000 to the Estate would best "restore the estate to the financial condition it would have been in had the fraudulent avoided transfer not occurred" (*Id.* (citing *In re Taylor*, 390 B.R. 654, 660 (B.A.P. 9th Cir. 2008)).

Neither § 550—nor any other provision in the Code—provides a standard for the court to apply in determining whether to order the recovery of the transferred asset or the value of the asset.  Filling in the statutory gaps, courts have typically considered whether the transferred asset has depreciated in value, whether there is contradictory evidence of the value of the asset, and "whether the value is readily determinable and a monetary award would result in a savings to the estate."  5 *Collier on Bankruptcy* ¶ 550.02[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); *see In re Fine Diamonds, LLC*, 501 B.R. 159, 183 (Bankr. S.D.N.Y. 2013) (ordering a money judgment for the value of the transferred asset—over $36 million in diamonds—because efforts to restore the transferred diamonds were unsuccessful, no conflict as to the value of the diamonds existed, and the diamonds' value was readily ascertainable).

30

Applying these factors, the Trustee argues that the value of the Ferrari is readily ascertainable because the parties stipulated that the value is $50,000 (ECF AP. No 161 at 3). Further, the Trustee provides an affidavit of a vehicle appraisal expert, James Sandoro ("Sandoro"), which indicates that at the time of Sandoro's appraisal in 2013, the value of the Ferrari was $50,000 (ECF No. 162). Because the Ferrari has not been appraised in the last year, its current physical condition is not known (*Id.*). It is also unknown "whether the Defendant has alienated the title of the Ferrari [or] impressed the Ferrari with a post-transfer lien" (ECF AP No. 161 at 3). Therefore, the Trustee contends that an award of $50,000, rather than the return of the Ferrari, more appropriately compensates the Estate (ECF AP No. 161 at 3). Finally, the Trustee asserts that the expense of recovering the Ferrari itself would be burdensome, as it is believed to be located in Texas (*Id.*). Additionally, liquidating the Ferrari would require the payment of transportation and advertising costs and auctioneer fees from the proceeds of sale.

The Court finds that granting a judgment of $50,000—representing the value of the Ferrari at the time of transfer—restores the Estate to the financial condition it would have enjoyed had the transfer not occurred. The value of the Ferrari is readily ascertainable—and has a stipulated and appraised value of $50,000. Further, the current mechanical condition of the Ferrari is unknown, as is the status of its title. Use of the vehicle by the Defendant during the pendency of this adversary proceeding has likely diminished the value of the Ferrari. Based on the foregoing, the Court determines that the Trustee should have judgment in the amount of $50,000, representing the stipulated value of the Ferrari at the time of the transfer, pursuant to 11 U.S.C. § 550(a).

**V.**

**CONCLUSION**

For the reasons set out in the Court's Findings of Fact and Conclusions of Law, based on

the evidence in the record, the Court determines that:

1) Defendant's Cross-Motion for Summary Judgment Dismissing the First Cause of Action is **DENIED**;

2) Defendant's Motion to Amend the Answer is **DENIED**;

3) Defendant's request for a jury trial is denied as having been **WAIVED**;

4) Plaintiff's Motion for Summary Judgment on the First Cause of Action, on the issue of liability under 11 U.S.C. § 548(a)(1)(A), is **GRANTED**; and

5) Plaintiff's request for Judgment in the amount of $50,000, representing the value of the Ferrari at the time of transfer, pursuant to 11 U.S.C. § 550(a), is **GRANTED**.


IT IS SO ORDERED.


Dated: November 20, 2014                    _____/s/_____
     Rochester, New York                          HON. PAUL R. WARREN
                                  UNITED STATES BANKRUPTCY JUDGE